Argued October 27, reversed and remanded November 10, 1972

# STATE OF OREGON, *Appellant, v.* IRENE RUTH COFFMAN (No. 31787), *Respondent.*

502 P2d 605

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*James H. Lewelling,* Newport, argued the cause for respondent. With him on the brief was Gordon MacPherson, Toledo.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

## LANGTRY, J.

This is an appeal from an order which suppresses evidence in the form of the results of a breathalyzer test given defendant, in a driving-while-intoxicated case, pursuant to ORS 483.634. The order is based upon a finding by the court that an ampoule containing chemicals used in administering the breath test was qualified as evidence only by hearsay, and its admissibility does not fall within any of the recognized exceptions of the hearsay evidence rule; and that the certificate that purports to certify the accuracy of the use of chemicals in the ampoule contains hearsay.

Defendant was arrested for driving while intoxicated. She consented to and received a breathalyzer test. The court heard testimony from the arresting officer concerning his use of the breathalyzer machine and from Gilbert C. Joyce, a State Health Division chemist who tests equipment used in breath testing.[1]

---

[1] In State v. Woodward, 1 Or App 338, 462 P2d 685 (1969), we held that a certificate that a certain breathalyzer machine had been tested and found accurate could be received in evidence as an exception to the hearsay rule.

Testimony was that ampoules of chemical substance used in the breathalyzer tests are made in large lots by the manufacturer of the breathalyzer machine and distributed to agencies which use the machine. Each lot is given, and each ampoule containing chemicals therefrom is stamped with, a common identifying number. This occurred in the instant case, the common number being 822. Twenty-five to 50 ampoules from any lot which is supplied to police stations in Oregon for use in breathalyzer machines are sent by the manufacturer directly to the State Health Division, which tests them for accuracy. The state had tested and found accurate ampoules numbered 822 which it had received from the manufacturer. Thus, in the case at bar, when an ampoule numbered 822 was used, the state had tested for accuracy one or more ampoules which the manufacturer had given the same number.

The principal point made by the defendant upon which the trial court agreed is that it is hearsay, not subject to cross-examination, that the ampoules tested by the State Health Division come from the same lot as those used in the machine.

In *State v. Baker,* 56 Wash 2d 846, 355 P2d 806 (1960), the point was made with reference to a breathalyzer test that the purity of the chemicals was proven only by hearsay. The court said:

> "The ampoules are sealed glass containers which are made and compounded by the same company which makes the breathalyzer machine. The ampoule cannot be tested as to chemical content without being broken, and once it is broken it can no longer be used. Thus, it was impossible to check the particular test ampoule that was used in the test on appellant. However, the state's evidence shows that the ampoules are shipped from the manufacturer in batches and each batch has a control num-

ber, which is stamped on each and every ampoule in that particular batch. Every time a new batch is received, Lt. Whitman spot checks at least six ampoules from that particular batch. During the course of his work, Lt. Whitman has tested hundreds of ampoules and has never found one which did not contain what it was certified to contain.

"The fact that the *sealed* ampoules are delivered by the manufacturer of the breathalyzer machine for exclusive use in such machine plus the additional fact of regular spot checking of the ampoules is, in our opinion, sufficient *prima facie* proof that the chemicals in any one ampoule are of the proper kind and mixed to the proper proportion." 56 Wash 2d at 854.

The exception to the hearsay rule approved in *Baker* is reasonable and has been followed by other courts. *Bremerton v. Osborne,* 66 Wash 2d 281, 401 P2d 973 (1965); *State v. Becker,* 429 SW2d 290 (Mo App 1968); *State v. Miller,* 146 NW2d 159 (ND 1966). We have not been cited to and have not found any case contra.

The difference between the facts in *Baker* and those in the instant case upon which defendant relies is that in *Baker* it appears that the spot checks for accuracy were made by the chemist picking a few ampoules at random from those shipped to the police station as distinguished from using ampoules that the manufacturer purportedly took from the lot and sent to the chemist before the balance was shipped to the police. We see no greater an exception to the hearsay rule in allowing the manufacturer to send directly part of its ampoules from the one lot to the state testing office and the other part to the police stations than in having the chemist go to the police station to pick

some at random from the shipment. In either case, whether he ships them to the chemist, or the chemist picks them up, we are accepting the manufacturer's representation that they all come from the same lot. In neither case is there an opportunity for cross-examining the manufacturer with reference thereto.

In *State v. Rines,* 269 A2d 9 (Me 1970), a challenge similar to that in the case at bar was made to the purity of chemicals used in testing for blood-alcohol content. There, the out-of-state manufacturer included in the shipment its representation, in the form of a certificate, of the purity of the chemicals. The court went into a detailed discussion about the necessity in such situations to allow an exception to the hearsay rule; otherwise, witnesses would have to be brought for direct proof of each step leading to the final compounding and use of the chemical. The court held that the certificate constituted prima facie evidence of the quality of the chemical. We think such a rule is reasonable and we hold that the common numbering of the ampoules in the case at bar is a representation of the manufacturer as trustworthy as its certificate to the same effect would be. It is prima facie evidence that all ampoules numbered 822 came from the same lot. Hence, the evidence should have been received as an exception to the hearsay rule.

Reversed and remanded.