Arthur ELDRIDGE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2000–CA–002379–DG.

Court of Appeals of Kentucky.

Dec. 7, 2001.

Case Ordered Published by Court of Appeals Feb. 8, 2002.

Richard Clay, Danville, KY, for appellant.

Albert B. Chandler III, Attorney General, George G. Seelig, Assistant Attorney General, Frankfort, KY, for appellee.

Before BUCKINGHAM, EMBERTON and TACKETT, Judges.

## OPINION

BUCKINGHAM, Judge.

We have accepted discretionary review of an order of the Boyle Circuit Court affirming the ruling of the Boyle District Court that the results of a breath alcohol test administered to Arthur Eldridge in conjunction with his arrest for DUI should not be suppressed. Eldridge contends that the breath alcohol test results should be suppressed (1) because the police officer administering the test failed to observe him for the required twenty-minute period prior to administering the test, and (2) because a new observation period was not conducted after he removed his dentures during the initial observation period. Because the trial court's finding that the police officer observed Eldridge for the required time is supported by substantial evidence, and because a new observation period was not required after Eldridge removed his dentures, we affirm.

On June 26, 1999, Officer Todd Davis of the Danville Police Department was dispatched to an injury accident at the 127 Bypass and Stewarts Lane in Danville. Upon arriving at the scene, Officer Davis discovered that there were no injuries; however, upon talking to Eldridge, who was involved in the accident, the officer detected a strong smell of alcohol on his breath. The officer also observed that Eldridge's eyes were bloodshot, his speech was slurred, and he was very unsteady on his feet. Based upon his observations, Officer Davis administered various field sobriety tests, which Eldridge was unable to complete. Officer Davis arrested Eldridge and transported him to the Boyle County detention center. On the Uniform Citation, Officer Davis noted the time of arrest as 2308 (11:08 p.m.).

Upon arriving at the detention center, Officer Davis obtained Eldridge's consent to administer a breath alcohol test. The test was administered on an Intoxilyzer 5000 Breathalyzer® machine, a device Officer Davis is trained to operate. Pursuant to 500 KAR [1] 8:030 § 1(1), before doing the breath alcohol test, the individual administering the test is required to observe the subject for twenty minutes to ensure that he does not eat, drink, smoke, or put anything in his nose or mouth for that period of time. At the suppression hearing, Officer Davis testified that, according to the breath alcohol clock, he commenced observing Eldridge at 2313 (11:13 p.m.) and began the test twenty-three minutes later, at 2336 (11:36 p.m.). The breath alcohol test produced a blood alcohol reading of .223.

1. Kentucky Administrative Regulations.

Eldridge subsequently moved to suppress the breath alcohol test results on the basis that (1) Officer Davis had not complied with the twenty-minute observation requirement, and (2) a new observation period was required when he removed his dentures during the initial observation period. A suppression hearing was held on March 8, 2000. Following the hearing, the Boyle District Court ruled that the breath alcohol test results were admissible.

Following the district court's ruling, Eldridge entered a conditional guilty plea pursuant to RCr[2] 8.09 and then appealed the ruling to the Boyle Circuit Court. On September 14, 2000, the Boyle Circuit Court entered an order affirming the decision of the district court. We accepted discretionary review and now affirm the decision of the Boyle Circuit Court.

First, Eldridge contends that Officer Davis failed to observe the twenty-minute observation time required by 500 KAR 8:030 § 1(1). Eldridge argues that while the test was performed at 2336 (11:36 p.m.), according to jail records, he was delivered into custody of the jail at 2322 (11:22 p.m.), only fourteen minutes before the commencement of the test.

■ RCr 9.78 provides that

If at any time before trial a defendant moves to suppress . . . (b) the fruits of a search, the trial court shall conduct an evidentiary hearing outside the presence of the jury and at the conclusion thereof shall enter into the record findings resolving the essential issues of fact raised by the motion or objection and necessary to support the ruling. If supported by substantial evidence the factual findings of the trial court shall be conclusive.

"In the absence of any showing to the contrary, we assume the correctness of the ruling by the trial court." *Harper v. Com-*

*monwealth,* Ky., 694 S.W.2d 665, 668 (1985), *cert. denied,* 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986); *Davis v. Commonwealth,* Ky., 795 S.W.2d 942, 949 (1990).

On March 8, 2000, an evidentiary hearing was held on Eldridge's motion to suppress the results of the breath alcohol test. At the conclusion of the hearing, the trial court made a finding of fact that Officer Davis had observed Eldridge for the required twenty-minute period before administering the test.

■ The finding of the trial court that Officer Davis observed Eldridge for the required twenty-minute period is supported by substantial evidence. Officer Davis testified at the suppression hearing that he began observing Eldridge at 11:13 p.m. and administered the test beginning at 11:36 p.m. In conjunction with his testimony, Davis referred to an "Intoxilyzer Instrument Printer Card" previously filed into the record which documented the testing of Eldridge. The card is signed by Officer Davis and includes his handwritten notation, "Observation Began at 2313 hrs." The card contains a computer printout line stating "Subject Test .223 23:36EDT[.]" The testimony of Officer Davis and the corroborating computer card prepared contemporaneously with the administering of the test support the factual finding of the trial court that the observation period was complied with. As the district court's finding is supported by substantial evidence, that finding is conclusive. RCr 9.78.

Eldridge argues that the jail records indicate that he was admitted to the jail at 11:22 p.m. and that, therefore, Officer Davis could not have begun his observation at 11:13 p.m. and, at most, the observation period lasted only fourteen minutes.

**2.** Kentucky Rules of Criminal Procedure.

However, the jailer testified that most likely the person admitting Eldridge took the log-in time off of the computer screen in the admission room and that the jail made no efforts to synchronize the computer clock and the Breathalyzer® clock. Because the clocks were not synchronized, the discrepancy noted by Eldridge does not discredit Officer Davis's testimony.

Next, Eldridge contends that the breath alcohol test should have been suppressed because Officer Davis was required to commence a new observation period when the appellant removed his dentures just prior to the beginning of the test. At the suppression hearing, Eldridge testified, without contradiction, that he removed his dentures just prior to the commencement of the breath alcohol test. However, Eldridge fails to cite any authority which would require the commencement of a new observation period when a subject removes his dentures during the initial observation period. We disagree that a new observation must be commenced if a subject removes his dentures during the mandatory observation period.

It has been stated that the purpose of the observation period is so the operator "can testify positively that during this twenty-minute observation period defendant had nothing to eat or drink, did not regurgitate or smoke." *Tipton v. Commonwealth*, Ky.App., 770 S.W.2d 239, 240 (1989) (citing Chemical Test Manual for Kentucky § 8.8B(3)). 500 KAR 8:030 § 1(1) provides that "A certified operator shall have continuous control of the person by present sense perception for at least twenty (20) minutes prior to the breath alcohol analysis. During the period the subject shall not have oral or nasal intake of substances which will affect the test." The most lenient construction of this regulation does not permit an interpretation that a subject's removal of his dentures during the observation period violates the observation guidelines or requires the commencement of a new observation period. To the contrary, the removal of dentures does not equate to the "oral or nasal intake of substances which will affect the test."

Further, Eldridge has failed to produce any evidence that the removal of his dentures shortly before the administering of the test caused, or could cause, an inaccurate breath alcohol reading. Eldridge did not call an expert witness to support his claim, and we have absolutely no basis to accept his premise that the removal of his dentures during the observation period prejudiced the testing process.

Eldridge attempts to support his position by citing us to Officer Davis's testimony regarding his training concerning the re-administering of an observation period:

[Defense Counsel]: You talked about observing to see that nothing was regurgitated or came back into somebody's mouth, or taken in from elsewhere, coming in their mouth. Are you also told anything about whether someone has dentures whether that might affect the test?

Davis: We [are] taught that if they have anything in their mouth at all that they need to take it out, yes sir.

[Defense Counsel]: And if there is something in their mouth or of [sic] they, for example, were to belch or regurgitate while you are observing them, at that point then you then start the observation time again?

Davis: Yes sir, you re-administer another 20 minute observation period.

We do not construe Officer Davis's testimony as an admission or assertion that an observation period needs to be re-administered upon the removal of dentures. Defense counsel's questioning specifically re-

ferred to whether re-administering was required if the subject belches or regurgitates. These occurrences, however, are distinguishable from the removal of dentures. The clear purpose of the twenty-minute observation period is to ensure that any residual alcohol present in the mouth has dissipated so that the Breathalyzer® machine measures only the alcohol content of breath exhaled from the lungs. Belching and regurgitating may contaminate the mouth with alcohol volumes from the stomach, and this is a rational basis for re-administering the observation period. On the other hand, there is not a risk of contaminating the mouth with alcohol volumes if the dentures are removed at some point during the twenty-minute observation period.

While Kentucky has not considered the effect of dentures in the administering of a breath alcohol test, several foreign jurisdictions have concluded that the failure of a subject to remove his dentures prior to testing does not, per se, invalidate the results of a Breathalyzer® test. *See Bruno v. Iowa Department of Transportation,* 603 N.W.2d 596 (Iowa 1999); *Illinois v. Witt,* 258 Ill.App.3d 124, 196 Ill.Dec. 459, 630 N.E.2d 156 (1994); *Smith v. State,* 180 Ga.App. 620, 349 S.E.2d 754 (1986); *Tennessee v. Cook,* 9 S.W.3d 98 (Tenn.1999); and *Farr v. Director of Revenue State of Missouri,* 914 S.W.2d 38 (Mo.App.1996). We agree with these authorities, and, moreover, because the removal of dentures prior to testing produces even less of a basis to question the results of the test, these authorities are squarely adverse to the arguments advocated by Eldridge.

In summary, the removal of dentures at any time during the twenty-minute observation period does not require the commencement of a new observation period.

For the foregoing reasons the judgment of the Boyle Circuit Court is affirmed.

ALL CONCUR.