NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

AARON C. WILSON, *Appellant*.

No. 1 CA-CR 16-0349
FILED 4-25-2017

Appeal from the Superior Court in Maricopa County
No. CR2015-127183-001
The Honorable Jerry Bernstein, Commissioner

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Gracynthia Claw
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kevin D. Heade
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Paul J. McMurdie joined.

**J O N E S,** Judge:

¶1            Aaron Wilson appeals his convictions and sentences for one count each of possession of dangerous drugs and possession of drug paraphernalia.  For the following reasons, we affirm.

## FACTS[1] AND PROCEDURAL HISTORY

¶2            Wilson was charged with one count possession of dangerous drugs and one count possession of drug paraphernalia arising from events occurring on June 12, 2015.  Wilson waived his right to a jury trial and the facts adduced at the bench trial are as follows.

¶3            At approximately 6:40 p.m. on June 12, 2015, a Phoenix police officer investigating a report of trespassing discovered Wilson sleeping, with his head resting on a backpack, in a narrow space between a storage container and a retaining wall near 7th Avenue and Hatcher Road.  After waking Wilson, who appeared dirty and unkempt, the officer obtained his identification and arrested him on two outstanding warrants.

¶4            Wilson then stated the backpack, and both a BMX bicycle and BMX bicycle frame nearby, belonged to him.  Wilson admitted there were two syringes in the side pocket of the backpack that he had found in the area between the storage container and the retaining wall.  The officer recovered two syringes, one of which he believed to contain methamphetamine, and the other, heroin.  Subsequent testing confirmed that one of the syringes contained 0.10 milliliters of methamphetamine.

¶5            At trial, Wilson denied making statements regarding ownership of the items or the circumstances surrounding the syringes to

---

[1]       We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against the defendant.  *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2 (App. 2015) (citing *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

the officer. Wilson explained he was taking a shortcut through a dirt lot to the bus stop at 7th Avenue and Hatcher Road; there, he planned to take the 106 or 80 bus west to 35th Avenue, transfer to the 35 bus north to Metro Center and then to Bell Road, and then bike the final mile to his job near 39th Avenue and Deer Valley Road in time for his 8 p.m. shift.[2] Wilson testified he noticed the backpack and other items behind the storage container and had stopped to investigate the contents of the backpack. But, he did not get the chance to look in the backpack because the officer arrived immediately thereafter. According to Wilson, when the officer asked if there was anything in the backpack that would "stick him," Wilson responded, "I don't know; it's not mine." Wilson testified the officer promised to release him if he admitted ownership of the drugs and paraphernalia, but he "still didn't admit to it because it wasn't [his]."

¶6        The trial court determined Wilson's explanation was not credible and found him guilty of the charged offenses. The court also found Wilson was on parole at the time of the offenses, determined he had two prior historical felony convictions, and sentenced him to a total of ten years' imprisonment. Wilson filed a timely notice of appeal. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1),[3] 13-4031, and 13-4033(A).

## DISCUSSION

¶7        Wilson argues the trial court violated his due process rights by considering evidence outside the record when it "improperly took informal judicial notice concerning the court's own inaccurate knowledge of bus schedules" in finding Wilson's testimony less credible than the officer's before pronouncing him guilty. Wilson's argument is premised upon the court's discussion of some of the information it considered in evaluating Wilson's credibility. Specifically, the court noted:

> Also [Wilson] was saying he was going to go to work, had to
> be there by 8 o'clock. This stop was made . . . about 6:35, 6:40

---

[2]        Wilson requests we take judicial notice, on appeal, of the bus schedules he has attached as appendices to his opening brief. *See State v. Rojers*, 216 Ariz. 555, 560-61, ¶¶ 25-26 (App. 2007). However, he concedes the schedules are not current as of June 12, 2015, the date of the incident, and therefore, they are not relevant to our consideration.

[3]        Absent material changes from the relevant date, we cite a statute's current version.

in the evening. Hoping to catch a bus on Hatcher, or if not going to take the other bus, then taking the bus 35, which you take up 35th Avenue to Bell, after stopping at Metro Center and hoping to get another bus, it's very, very iffy. And the idea at that time of night getting all those buses and matching within that period of time, I suppose there's no evidence about bus schedules, but that's an issue because then, once he finally gets off the bus, he would have to ride his bike from — another mile from Bell Road to Deer Valley Road.

Wilson did not object to this argument when made in the State's closing argument. We accordingly review his claim for fundamental error only. *See State v. Henderson,* 210 Ariz. 561, 567, ¶ 19 (2005) ("Fundamental error review . . . applies when a defendant fails to object to alleged trial error.") (citing *State v. Bible*, 175 Ariz. 549, 572 (1993)). On fundamental error review, the defendant has the burden of proving the court erred, the error was fundamental in nature, and he was prejudiced thereby. *Id.* at ¶ 20 (citations omitted).

¶8 The record does not support Wilson's claim that the trial court took "informal judicial notice" of any fact. Under Arizona Rule of Evidence 201(b), a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Here, however, the court did not accept as fact any actual bus schedules. Rather, it relied upon common sense to find Wilson's story about a complicated bus and bicycle commute on a tight schedule was suspect.

¶9 In doing so, the judge fulfilled his role, as the fact finder in a bench trial, to evaluate the witnesses' credibility based upon the evidence at trial and determine what reasonable inferences are to be drawn therefrom. *See FL Receivables Tr. 2002-A v. Ariz. Mills, L.L.C.*, 230 Ariz. 160, 168, ¶ 34 (App. 2012) ("The fact finder is the sole judge of the facts and the credibility of the witnesses.") (citing *Walsh v. Advanced Cardiac Specialists Chartered*, 227 Ariz. 354, 361, ¶¶ 23-24 (App. 2011)). Although a trial judge is not permitted to rely upon his specialized personal knowledge of facts not in evidence, *see United States v. Berber-Tinoco*, 510 F.3d 1083, 1091 (9th Cir. 2007) ("It is . . . plainly accepted that the judge is not to use from the bench, under the guise of judicial knowledge, that which he knows *only as an individual* observer outside of court.") (quotation and citation omitted), none of the cases cited by Wilson hold that the judge is not permitted to use common sense in evaluating a witness's credibility, or they are otherwise

distinguishable, *see id.* (concluding the trial court erred in making findings regarding the location of signage on, and the condition of, a roadway with which the judge was personally familiar); *United States v. Sorrells*, 714 F.2d 1522, 1527 n.6 (11th Cir. 1983) (rejecting the argument that the trial court judge's conclusion that an informant was reliable, based upon his prior experience with the informant, could cure an otherwise defective search warrant affidavit); *Commonwealth v. Howlett*, 328 S.W.3d 191, 192-93 (Ky. 2010) (concluding the trial court improperly took judicial notice of the operating instructions for a breathalyzer machine where the information was gained by the judge through his prior experience as a prosecutor); *State v. Vejvoda*, 438 N.W.2d 461, 473 (Neb. 1989) (concluding "the locational inference necessary for venue was not an adjudicative fact" appropriate for judicial notice); *O'Neill v. Dep't of Revenue*, 739 P.2d 456, 459-60 (Mont. 1987) (concluding the trial court "went far beyond the record" when its observations regarding a motel's generation of business compared to other motels in the area could only be verified by thorough research of facts not in the record*); Guyton v. Monteau*, 332 S.W.3d 687, 692 (Tex. Ct. App. 2011) (finding an abuse of discretion where trial court took judicial notice of "all documents and testimony in the twelve-year history of the case" because the court may not take judicial notice of the truth of the information contained in the record and prior trial testimony is subject to different interpretations and "lacks the high degree of indisputability required to justify taking judicial notice"); *In re C.L.*, 304 S.W.3d 512, 515-16 (Tex. Ct. App. 2009) (concluding the trial court did not take proper judicial notice of the materials it relied upon because it failed to notify the parties of its action or provide them the opportunity to be heard); *City of Beaver Dam v. Cromheecke*, 587 N.W.2d 923, 926 n.3 (Wis. Ct. App. 1998) (concluding the trial judge's personal observations regarding a property's availability to public "do not, in themselves, establish that [the fact] was generally known in the jurisdiction"); *see also* Rev. Ariz. Jury Instr. Preliminary Crim. 10 (4th ed. 2016) (directing the jury, in evaluating the credibility of witnesses, to "[c]onsider all of the evidence in light of reason, common sense, and experience").

¶10 Here, the trial court specifically noted that no evidence of any bus schedules had been introduced. The court then referenced Wilson's testimony regarding his commute, a matter on which the court had questioned him extensively, and, given the complicated nature of the plan and the testimony that Wilson was sleeping when the officer made contact, expressed its skepticism that Wilson was being truthful in his version of events. The court also found Wilson's credibility suspect because Wilson claimed the route over the dirt lot was a shortcut to the bus stop when a map of the area indicated there were shorter routes over paved areas, and

Wilson's detour through a "very, very narrow" area behind the storage container would make no sense if "he was just going down to the bus stop." The court further found it too coincidental that Wilson, who was riding a BMX bicycle, had stumbled upon an abandoned BMX frame. Viewing the record and the court's findings regarding Wilson's credibility as a whole, the remark regarding the "iffy" nature of the tight itinerary described by Wilson appears on its face to be a common-sense credibility determination based upon reasonable inferences drawn from the evidence, rather than any personal knowledge of bus schedules. Wilson has failed to demonstrate error, much less fundamental, prejudicial error.

**CONCLUSION**

¶11        Wilson's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AA